UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ROBERT CHARLES MASSAT,<br><br>　　　　　Defendant. | CR. 15-50089-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Robert Massat filed a motion to dismiss the indictment on the basis of double jeopardy and also moved to compel the government to disclose grand jury transcripts in support of the motion to dismiss.  (Dockets 38 & 40).  The government resists the defendant's motions.  (Dockets 44 & 45).   For the reasons stated below, defendant's motions are denied.

**ANALYSIS**

<u>MOTION TO DISMISS</u>

On July 21, 2015, Mr. Massat was indicted for the offense of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).  (Docket 1).  The indictment alleges:

> Beginning on or about 2013, and continuing through the date of this Indictment, in the District of South Dakota and elsewhere, the defendant, Robert Charles Massat, did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to the Grand Jury to knowingly and intentionally distribute and to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of

>  methamphetamine, its salts, isomers, and salts of its isomers, a
>  Schedule II controlled substance . . . .

Id.   Trevor Ray, an alleged co-conspirator was separately indicted and convicted at jury trial of the same conspiracy offense.[1]   See United States v. Trevor Ray, 15-50043-JLV (D.S.D. 2015), Dockets 33 at p. 1 & 60 at pp. 1-2.  Mr. Massat argues his prosecution is prohibited by the Double Jeopardy Clause of the Fifth Amendment because "[t]he evidence being used to prosecute [him] for conspiracy . . . duplicates the evidence used to prosecute and convict Ray for conspiracy under the same statutes.  The conspiracy charged in Massat's Indictment, therefore, is 'in law and fact the same offense' as charged in Ray's Indictment . . . ."   (Docket 39 at p. 2).

Mr. Massat "bears the initial burden of showing a non-frivolous claim of double jeopardy. . . . Once the defendant has made that initial showing, the burden shifts to the government to show by a preponderance of the evidence" that jeopardy has not attached.   United States v. Okolie, 3 F.3d 287, 289 (8th Cir. 1993) (internal citations omitted).   The United States Court of Appeals for the Eighth Circuit "reviews the issue of double jeopardy *de novo*."   Id.

"The denial of a motion to dismiss on double jeopardy grounds may be raised in an interlocutory appeal."   United States v. Brown, 926 F.2d 779, 781 (8th Cir. 1991).   "[I]f the district court finds a defendant has failed to make a

---

[1] Mr. Ray also was convicted of the substantive offenses of distribution of a controlled substance and possession of a controlled substance.   See United States v. Ray, 15-50043-JLV, Dockets 33 at p. 2 & 60 at p. 2.   These convictions are not relevant to the analysis of Mr. Massat's motion to dismiss.

colorable showing of 'previous jeopardy and the threat of repeated jeopardy,' the filing of a notice of appeal from the denial of the double jeopardy motion does not divest the district court of jurisdiction." Id. (internal citation omitted). The district court is expected "to make a written finding of whether a double jeopardy claim is frivolous or nonfrivolous (i.e., colorable), with a 'frivolous' finding to be followed by expedited review on appeal." Id. (parentheticals in original; internal citation omitted). "Upon such review, [the Eighth Circuit] should dismiss the appeal for lack of jurisdiction if [it] also find[s] the claim is frivolous." Id.

Mr. Massat asserts that "[o]nce Ray was convicted . . . any Indictment based on the same conspiracy filed after that conviction (as has occurred in Massat's case), violates the Double Jeopardy Clause of the United States Constitution." (Docket 39 at pp. 6-7) (parentheticals in original). Mr. Massat acknowledges there is "no case directly on point, but that is because it appears this specific issue has not previously been litigated." (Docket 46 at p. 1). He admits "[t]he majority of the cases that have analyzed Double Jeopardy in context of agency or vicarious liability relationships would, at first impression, seem to foreclose the argument advanced by Massat." Id. at pp. 1-2. However, Mr. Massat argues "where the Government has filed a separate indictment against an alleged co-conspirator, and jeopardy has already attached in that other indictment for the same criminal agreement, Double Jeopardy is violated when the Government files an Indictment against another alleged co-conspirator based on the same facts used to secure a conviction for the criminal agreement in

3

which jeopardy had already attached. . . . Therefore, since there has already been a 'finding of guilt' of the criminal agreement, jeopardy has attached." Id. at p. 6 (italics removed) (referencing Pinkerton v. United States, 328 U.S. 640, 643 (1946) (" 'conspiracy is a partnership in crime' distinct from any substantive offense") and Serfass v. United States, 420 U.S. 377, 391-92 (1975) ("[w]ithout risk of a determination of guilt, jeopardy does not attach . . . .")).

"The Fifth Amendment assures that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' " United States v. Abboud, 273 F.3d 763, 766 (8th Cir. 2001) (citing U.S. Const. amend. V). "The clause provides three separate protections for criminal defendants: protection against a second prosecution for the same offense after acquittal, protection against prosecution for the same offense after conviction, and protection against multiple punishments for the same offense." Id. "The clause also prohibits government from dividing a single criminal conspiracy into multiple conspiracy convictions. . . . The alleged agreement itself is the prohibited conduct targeted by the conspiracy statute, and there is only one offense where there is only one agreement." Id. (internal citations omitted).

"The constitutional protection against double jeopardy is 'intrinsically personal.' . . . A defendant cannot invoke it to prevent his punishment on the ground that another already has been punished. . . . a double jeopardy claim . . . requires at least a colorable showing that a defendant once before has been in jeopardy. . . . [W]ithout risk of a determination of guilt, jeopardy does not attach

. . . ." United States v. Andrews, 146 F.3d 933, 937-38 (D.C. Cir. 1998) (internal quotation marks, bracketing and citations omitted).  The Double Jeopardy Clause has "two prongs: it protects not only against successive prosecution, but also against successive punishment." Id. at 936 (internal quotation marks and citation omitted).  "The Court has described the successive prosecution prong as protecting against two more distinct abuses: 'a second prosecution for the same offense after acquittal [and] a second prosecution for the same offense after conviction.' " Id. at 937 n.3 (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  "The prohibition against successive prosecution protects against a third distinct abuse as well: even without acquittal or conviction, this prong bars a second prosecution for the same offense if the first prosecution is dismissed after jeopardy has attached . . . ." Id.

Mr. Massat has not been previously prosecuted for, acquitted of or punished for the drug conspiracy alleged in the indictment.  In Andrews, the court reflected on the double jeopardy analysis of a defendant who was not a party to a prior proceeding.  "He . . . is in no more difficult a position than that of a yet-unindicted grand jury subject who watches his confederate proceed to trial.  He may be apprehensive about his own fate, but until he himself goes to trial he cannot claim to have been placed in jeopardy." Id. at 938.

"The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is put to trial before the trier of facts, whether the trier be a jury or a

5

judge." Serfass, 420 U.S. at 388 (internal quotation marks and citation omitted). The unwavering reality is "the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." Id. at 393.

Mr. Massat seeks to avoid the conclusion that jeopardy has not attached in his case by citation to United States v. Kreimes, 649 F.2d 1185 (5th Cir. 1981). He argues it is significant that the Kreimes' court "found that 'dismissal of charges against a co-conspirator *prior to attachment of jeopardy* does not bar the conviction of another conspirator.'" (Docket 46 at p. 2) (emphasis in original) (citing Kreimes, 649 F.2d at 1193). What Mr. Massat fails to acknowledge is that five individuals were indicted along with Mr. Kreime on the conspiracy charge. Kreimes, 649 F.2d at 1189. "Charges against two of appellant's co-defendants were dismissed prior to trial, the government's motion for mistrial was granted as to another and motions for judgments of acquittal were granted as to the remaining two co-defendants." Id. Mr. Kreime's case was not barred on the basis of double jeopardy even though jeopardy had attached as to the two co-defendants who were acquitted. Id. at 1193.

Mr. Massat's reliance on United States v. Bruno, 333 F. Supp. 570 (E.D. Pa. 1971) also is misplaced. Mr. Massat argues that Bruno provides support for dismissal of the Massat "conspiracy indictment on collateral estoppel grounds." (Docket 46 at p. 2). In Bruno, according to the government's theory the conspiracy was based on an allegedly fraudulent letter. Bruno 333 F. Supp. at 572. In a previous case of two alleged co-conspirators and involving the same

6

letter, the district court precluded the government from presenting evidence of falsity because of deficiencies in the qualifications of the government's expert witness.  In the previous case, the court ruled it would "not allow a jury to speculate as to the guilt or innocence of [the two alleged co-conspirators] based entirely on . . . ink-identification evidence which has not achieved [a] level of acceptance."  Id. at 574.  In Mr. Bruno's case, the court ruled "that having had a full and fair opportunity to attack the authenticity of the questioned document in the first case, the Government is collaterally estopped from relitigating that issue.  Since there is no other overt act to support the conspiracy charge, the motion to dismiss Count I of the indictment must be granted."  Id. at 576. Bruno did not deal with the attachment of jeopardy, but rather the application of the collateral estoppel doctrine to warrant dismissal of an indictment on the basis of "judicial economy or fundamental fairness" to avoid "the relitigation of matters already clearly resolved in a prior adjudication."  United States v. Standefer, 610 F.2d 1076, 1097 (3d Cir. 1979), aff'd, 447 U.S. 10 (1980).

"Conspiracy is an . . . agreement to commit an unlawful act."  Iannelli v. United States, 420 U.S. 770, 777 (1975).  But contrary to Mr. Massat's argument, the Double Jeopardy Clause does not protect him from prosecution simply because jeopardy attached to Mr. Ray's conviction for his participation in the conspiracy with which Mr. Massat is implicated.  Mr. Massat "may be apprehensive about his own fate, but until he himself goes to trial he cannot claim to have been placed in jeopardy."  Andrews, 146 F.3d at 938.

Mr. Massat's motion to dismiss the indictment on the basis of double jeopardy is frivolous as he has not demonstrated a colorable double jeopardy claim.  Brown, 926 F.2d at 781.  The defendant's motion to dismiss the indictment is denied.

GRAND JURY TRANSCRIPTS

Mr. Massat moved to compel the government to disclose the transcripts of the grand jury proceedings in both his case and the case of Mr. Ray.  (Docket 40).  Mr. Massat claims:

> [The grand jury transcripts must be produced] because the inspection of the proceedings before the Grand Jury is reasonably required and is material to the preparation of the defense of Defendant; because inspection of the Grand Jury Minutes will enable the Court to determine substantial legal and constitutional questions that have been raised by the Defendant's Motion to Dismiss the Indictment . . . because the denial of the inspection of the Grand Jury Minutes would arbitrarily deprive Defendant[] of a fair trial and his liberty without due process of law, contrary to the due process and fair trial provisions of the Fifth and Sixth Amendments to the United States Constitution; and because due and timely inspection of the Grand Jury Minutes is necessary in order to prevent the suppression of constitutionally-protected material.

Id. at pp. 1-2.  Mr. Massat claims his "particularized need" for access to the grand jury transcripts is set forth in his motion to dismiss the indictment on the basis of double jeopardy and the supporting brief.  (Docket 41 at p. 2).

The government resists Mr. Massat's motion.  (Docket 45).  The government argues "the defendant has not and cannot make a showing that anything in the grand jury transcripts would support his argument that there is a double jeopardy violation, let alone that there was a specific defect or deficiency

in the proceedings that would warrant disclosure of the transcript outside the parameters of the Jencks Act." Id. at p. 3 (referencing 18 U.S.C. § 3500(a)).

"[G]rand jury testimony is generally not discoverable on pretrial motion." United States v. Pelton, 578 F.2d 701, 709 (8th Cir. 1978). "[G]rand jury transcripts need only be released by the government insofar as required under the Jencks Act . . . ." United States v. Wilkinson, 124 F.3d 971, 977 (8th Cir. 1997) (referencing 18 U.S.C. § 3500). "While the Federal Rules of Criminal Procedure authorize disclosure of grand jury transcripts under certain circumstances, . . . parties seeking such disclosure 'must show a "particularized need," and the decision to permit disclosure lies within the sound discretion of the trial judge . . . .'" Id. (referencing Fed. R. Crim. P. 6(e)(3) and citing United States v. Benson, 760 F.2d 862, 864 (8th Cir. 1985)). Rule 6 authorizes the court to disclose a grand jury transcript "at a time, in a manner, and subject to any other conditions that it directs . . . preliminary to or in connection with a judicial proceeding; [or] at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury . . . ." Fed. R. Crim. P. 6(c)(3)(E)(i) & (ii). The burden rests on the defendant "to show a particularized need for this testimony." Wilkinson, 124 F.3d at 977.

Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena,

discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a) (parentheticals in original). The term "statement" includes the written statement of a witness, a written statement adopted by a witness or a transcript of a witness' oral statement, including grand jury testimony. 18 U.S.C. § 3500(e)(1), (2) & (3). The Federal Rules of Criminal Procedure also control the disclosure of grand jury transcripts. "After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). The rule requires disclosure of the witness' grand jury testimony. Fed. R. Crim. P. 26.2 (f)(3). Notwithstanding the discovery parameter established by subsection (a) of the Jencks Act, the court is aware of the local practice of the Office of the United States Attorney for the District of South Dakota to disclose all Jencks Act materials the Friday prior to the commencement of trial.

    The only "particularized need" articulated by Mr. Massat is that disclosure of the grand jury proceedings of his case and Ray, 15-50043, are necessary to resolve the defendant's double jeopardy claim. (Docket 41 at p. 2). The court denied Mr. Massat's double jeopardy claim by this order. No good cause has

been shown.  Defendant's motion to compel disclosure of the grand jury transcripts is denied.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss the indictment (Docket 38) is denied.

IT IS FURTHER ORDERED that Mr. Massat's motion to dismiss the indictment is frivolous as he has not demonstrated a colorable double jeopardy claim "of previous jeopardy and the threat of repeated jeopardy . . . ."  Brown, 926 F.2d 781 (internal quotations marks omitted).

IT IS FURTHER ORDERED that the court will not stay the proceedings in the event Mr. Massat seeks an interlocutory appeal from this order.  Id.

IT IS FURTHER ORDERED that the defendant's motion to compel disclosure of grand jury transcripts (Docket 40) is denied.

Dated July 15, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE